No. 19,717.

CLYDE MARIS, a Minor, etc., *Appellant*, v. THE LAWRENCE RAILWAY & LIGHT COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. EVIDENCE — *Conclusion of Witness — Inadmissible.* An objection is properly sustained to a question which calls for a mere conclusion of the witness upon one of the ultimate facts which it is the duty of the jury to determine.

2. INJURIES—*Collision—Motorcycle and Street Car — Negligence — Doctrine of "Last Clear Chance"—No Application.* In an action to recover damages for injuries resulting from a collision between a motorcycle upon which plaintiff was riding and a street car of the defendant the doctrine of "the last clear chance" does not apply where the negligence of the defendant is predicated upon the theory that defendant should have discovered the plaintiff's danger in time to have avoided the injury, but did not in fact discover it.

3. NEGLIGENCE—*Special Findings—Contradict Finding of Negligence— Verdict Set Aside.* Where the special findings showing in detail just

what occurred contradict and overturn the finding of negligence, they control, and it is proper in such case to set aside the verdict in plaintiff's favor and render judgment for defendant upon the findings.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed June 10, 1916. Affirmed.

*O. O. Osborn*, of Stockton, and *S. N. Hawkes*, of Topeka, for the appellant.

*Hugh Means*, and *Raymond F. Rice*, both of Lawrence, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In this action the plaintiff seeks to recover damages for personal injuries resulting from a collision between a motorcycle upon which he was riding and a street car of the defendant. The jury returned a verdict in his favor and answered forty-five special questions. The court set aside the verdict and upon the special findings rendered judgment in defendant's favor for costs, from which the plaintiff appeals.

The plaintiff alleged that at the time of the accident he was driving his motorcycle in a careful and prudent manner and defendant was operating its street car at a reckless and dangerous rate of speed, to wit, twenty-five miles per hour, without ringing the bell or sounding any warning of the approach of the car at the crossing, and without having the car equipped with proper appliances to check its speed, and without having the appliances and brakes properly screened or shielded; also that the brakes and appliances were worn out, defective and worthless, and that these defects and conditions had existed for a long time and could have been known by defendant by reasonable care and diligence. There was, further, an allegation in substance that after the motorman discovered the dangerous position of the plaintiff under the car he negligently failed to stop, and that the car dragged the plaintiff for a distance of about ninety feet.

The facts found by the jury are, in substance, these: The tracks of the defendant run north and south on New Jersey street in the city of Lawrence. Tenth street runs east and west and crosses New Jersey street. The accident occurred at this intersection, about dusk on the evening of May 4, 1912. The

plaintiff, who resided three blocks distant, was familiar with the situation and experienced in the operation of motorcycles. At the time of the accident he was traveling east on Tenth avenue at a speed of from twenty to twenty-five miles an hour, and he did not reduce his speed until he saw the street car when he was between fifty-five and sixty-five feet from the tracks. The maximum speed at which motorcycles are permitted to run by the ordinances of the city of Lawrence is fifteen miles an hour. The jury found that plaintiff did not approach the crossing at a speed which was reasonable and proper, either with regard to the use and traffic of the intersection or with regard to his own safety; that he did not listen for approaching cars on New Jersey street, that if he had shut off his motor and listened he could have heard the noise of the car and its gong, which was sounded just before the car reached Tenth street. The street car was running about ten miles an hour. An ordinance of the city permitted street cars to run at fifteen miles an hour. The headlight of the street car was lighted at the time. As the car approached the intersection the motorman looked west on Tenth street but did not see the plaintiff for the reason that the plaintiff was not close enough to be seen from the car. After looking to the west the motorman looked east for any vehicles or persons approaching from that direction. There is a much steeper grade to the east of New Jersey street than there is to the west. When first seen by the motorman the plaintiff was twenty-five feet from the car. Immediately on discovering the plaintiff the motorman applied the brakes and made every possible effort to stop the car, which ran from eighty to ninety feet before coming to a stop. The jury found that, under the circumstances, considering the speed of the car and the downward grade of the street, this was a reasonable distance within which to stop the car. It appears that when the plaintiff saw he would not be able to stop his machine he attempted to turn it sharply toward the north and to pass between the curbing at the west side of New Jersey street and the approaching car. He turned his machine to the northeast and stopped it suddenly five or six feet from the car, but was thrown over the machine and partly under the running board of the car, and was dragged for some distance before the car was stopped. The findings are that when the

plaintiff was thrown from his machine in front of the car the motorman did not see him and did not know until the car was stopped that the plaintiff was under it. The jury were asked to state in what the negligence of the defendant consisted, and gave the following answer:

"Motorman's negligence in not seeing approaching plaintiff before his attention was called to same by passengers on said car."

The first complaint is of the refusal to permit a witness who saw the accident to answer this question: "If this car had abated its speed or slackened its speed could the collision, in your judgment, have been avoided?" In the first place the jury did not need a witness to tell them what was obvious— that if the car had slackened its speed to such an extent that plaintiff could have crossed in front of it there would have been no collision. The objection to the question was properly sustained, because it called for a mere conclusion of the witness upon a fact solely within the province of the jury to determine from a consideration of all the testimony. It was in violation of the general rule that "the opinion of witnesses is only admissible upon the ground of necessity, but can never be given upon the ultimate facts which it is the duty of the jury to determine." (*Erb v. Popritz,* 59 Kan. 264, 270, 52 Pac. 871. See, also, *Oil Co. v. Drilling Co.,* 80 Kan. 261, 101 Pac. 1072.)

We deem it unnecessary to enter into a discussion of the doctrine of "the last clear chance." It was relied upon in the petition and is urged here, but the doctrine finds no room for application to the situation presented by the facts determined by the jury. The plaintiff's own negligence extended up to and actually contributed to his injury. There was no new breach of duty by the motorman subsequent to plaintiff's negligence. The finding is that the motorman did not see plaintiff when he was thrown under the car and that he first learned of the fact when the car was stopped, and besides there is the finding that he did everything in his power to stop the car as soon as he saw the plaintiff. That the doctrine of the last clear chance is not applicable to these facts, see *Dyerson v. Railway Co.,* 74 Kan. 528, 87 Pac. 680, 7 L. R. A., n. s., 172; *Railway Co. v. Bentley,* 78 Kan. 221, 93 Pac. 150; *Himmelwright v. Baker,* 82 Kan. 569, 109 Pac. 178; *Coleman v. Railway Co.,* 87 Kan.

190, 123 Pac. 756; *Marple v. Railway Co.*, on rehearing, 85 Kan. 705, 118 Pac. 692. The theory upon which plaintiff seeks to support the doctrine is, that the motorman ought to have discovered the perilous situation of the plaintiff in time to have avoided the injury. In *Coleman v. Railway Co.*, supra, and in *Marple v. Railway Co.*, supra, it was held that the doctrine never applies where the negligence of the defendant is predicated upon the theory that defendant should have discovered plaintiff's danger in time to have avoided the injury but did not in fact discover it.

The passenger who saw the approach of the plaintiff and informed the motorman was seated on the west side of the car and was looking west through the window. The jury's finding of negligence amounts to nothing more than that in their opinion the motorman should have discovered plaintiff's approach as soon as this passenger discovered it. But the passenger may have been looking all the time toward the west. The motorman had other duties and responsibilities, and was required to look to each side of the crossing as well as in front. He testified that owing to the steep decline toward the tracks from the east he had more reason to expect trouble from that direction. He had already looked to the west and satisfied himself that no one would reach the crossing ahead of the car. The special findings showing in detail just what occurred overturn the finding of negligence and must control. (*A. T. & S. F. Rld. Co. v. Plunkett, Adm'r*, 25 Kan. 188; *C. B. U. P. Rld. Co. v. Henigh, Adm'r*, 23 Kan. 347, 359, 33 Am. Rep. 167; *A. T. & S. F. Rld. v. Plaskett*, 47 Kan. 112, 115, 27 Pac. 824; *Penrose v. Cooper*, 88 Kan. 210, 213, 128 Pac. 362; *Bateman v. Sarbach, Adm'x*, 89 Kan. 488, 495, 132 Pac. 169.)

We find no error in the instructions. There was no evidence tending to show notice or knowledge on the part of defendant that there were defects in the brakes or appliances of the car. This is a fact case with the findings wholly against the plaintiff's contentions, and supported by evidence about which there was very little dispute.

The judgment is affirmed.